Martin R. Galbut (#002943)
Michaile J. Berg (#027166)
GALBUT & GALBUT, P.C.
2425 East Camelback Road, Suite 1020
Phoenix, Arizona 85016
Phone:   602.955.1455
Fax:      602.955.1585
docket@galbutlaw.com

Kenneth L. Doroshow (D.C. Bar # 429044)
Jonathan A. Langlinais (D.C. Bar # 1046832)
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Phone:   202.639.6000
Fax:      202.639.6066
KDoroshow@jenner.com
JALanglinais@jenner.com
*Pro Hac Vice* Pending
*Counsel for Plaintiff Nintendo of America Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nintendo of America Inc., a Washington Corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>Jacob Mathias and Mathias Designs, L.L.C., d/b/a www.LoveROMs.com and www.LoveRETRO.co,<br><br>*Defendants*. | Case No.<br><br>**COMPLAINT**<br><br>**(Copyright Infringement; Trademark Infringement; and Unfair Competition)** |

## PRELIMINARY STATEMENT

Plaintiff Nintendo of America Inc. ("NOA" or "Nintendo"), by and through its counsel, on personal knowledge as to its own actions and on information and belief as to the actions, capabilities, statuses, and motivations of others, hereby alleges as follows:

1.      Defendants Jacob Mathias and Mathias Designs, L.L.C. own and operate two interrelated websites—www.LoveROMs.com (the "LoveROMs website") and www.LoveRETRO.co (the "LoveRETRO website")—that are built almost entirely on the brazen and mass-scale infringement of Nintendo's intellectual property rights.  The LoveROMs and LoveRETRO websites are among the most open and notorious online hubs for pirated video games.  Through the LoveROMs and LoveRETRO websites, Defendants reproduce, distribute, publicly perform and display a staggering number of unauthorized copies of Nintendo's video games, all without Nintendo's permission.  This includes thousands of games developed for nearly every video game system Nintendo has ever produced.

2.      In addition to Nintendo's video games, Defendants reproduce, distribute, and publicly perform a vast library of Nintendo's other copyrighted works on and through the LoveROMs and LoveRETRO websites, including the proprietary BIOS software for several of Nintendo's video game systems and thousands of Nintendo's copyrighted musical works and audio recordings.  Defendants also make extensive use of Nintendo's registered trademarks, including the Nintendo logo and the most recognizable Nintendo video game characters, to encourage visitors to download and play unauthorized copies of Nintendo's copyrighted works.

3.      Defendants have conducted their online piracy business in willful disregard of Nintendo's rights.  Defendants are not casual gamers but are instead sophisticated parties with extensive knowledge of Nintendo's intellectual property and the video game industry more generally.  Defendants know or should know that Nintendo owns the

copyrights and registered trademarks for thousands of video games, related copyrighted works, and images that appear on Defendants' illicit websites.  Defendants know or should know that they are trafficking in pirated copies and making unauthorized use of Nintendo's video games, other copyrighted works, and registered trademarks.  And they know or should know that Nintendo continues to produce, market, and sell many of the video games that appear on the LoveROMs and LoveRETRO websites.  Yet Defendants continue willfully to infringe Nintendo's highly valuable intellectual property rights and, in the process, to enrich themselves through, among other things, donation requests and the sale of advertising space on the LoveROMs and LoveRETRO websites.

4.     Defendants' unauthorized reproduction, distribution, display, and performance of Nintendo's copyrighted video games and related works and their unauthorized use of Nintendo's registered trademarks has damaged Nintendo, infringes and threatens irreparable injury to Nintendo's intellectual property rights, and violates the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.* Defendants' willful violations of these statutes entitle Nintendo to the relief sought herein.

## THE PARTIES

5.     Nintendo of America Inc. ("NOA") is a Washington corporation headquartered in Redmond, Washington.  Nintendo of America Inc. is a wholly-owned subsidiary of Nintendo Co. Ltd. ("NCL"), a Japanese company headquartered in Kyoto, Japan (collectively, "Nintendo").  NCL develops and manufactures electronic video game systems, video games, accessories, and other copyrighted works.  NOA is responsible for

the marketing and sale of Nintendo products in the United States and elsewhere in the Western Hemisphere.  NOA is also responsible for enforcing Nintendo's intellectual property rights in the Western Hemisphere.

6.      Defendant Jacob Mathias is a natural person who resides in this District. Defendant Jacob Mathias owns or controls the websites located at www.LoveROMs.com and www.LoveRETRO.co, as well as several other domain names that redirect visitors to www.LoveROMs.com, including www.Roms4Droid.com.

7.      Defendant Mathias Designs, L.L.C. is an Arizona limited liability company that was first incorporated on February 17, 2016.  On their LoveROMS and LoveRETRO websites, Defendants describe Mathias Designs, L.L.C. as "DBA LoveROMs" and "dba LoveRetro.co."

8.      The articles of organization for Defendant Mathias Designs, L.L.C. list Defendant Jacob Mathias as the company's sole agent, sole manager, and sole member. Defendant Mathias Designs, L.L.C. is simply the alter ego, instrument, or mere business conduit of Defendant Jacob Mathias, who makes inconsistent use of the corporate form in an effort to shield himself from liability for his extensive and flagrant piracy of copyrighted works and infringing use of registered trademarks.

9.      Defendants reproduce unauthorized copies of Nintendo video games and related copyrighted works, distribute those copies, perform and display unauthorized copies of Nintendo video games, and make extensive use of Nintendo's registered trademarks for their own profit.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over Nintendo's claims under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (trademark and copyright).

11.     This Court has personal jurisdiction over the Defendants because the Defendants reside and do business in this District.

12.     This District is the proper venue for Nintendo's claims under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the infringing acts occurred in this District and because the Defendants reside and may be found in this District.

**FACTS COMMON TO ALL CLAIMS**

**NINTENDO'S INTELLECTUAL PROPERTY AND PRODUCTS**

13.     "Nintendo" is a famous brand throughout the United States and the world, known by consumers of all ages for its fun and innovative video games, video game systems, and its beloved video game characters.

14.     For decades, Nintendo has been a leading developer and producer of video games and video game systems.  In 1985, Nintendo released the Nintendo Entertainment System or "NES," which introduced millions of consumers to now-classic games like Super Mario Bros., Super Mario Bros. 3, The Legend of Zelda, and Donkey Kong.  The NES console also introduced millions of consumers to some of Nintendo's most beloved characters, including Mario and Luigi, Link, and Samus Aran.  Over the ensuing decades, Nintendo followed up the success of the NES console with the release of such groundbreaking home video game consoles as Super Nintendo Entertainment System (or

"SNES"), Nintendo 64 (or "N64"), Nintendo GameCube, Wii, Wii U, and Nintendo Switch.

15.     In addition to its highly successful home video game consoles, Nintendo has long been a market leader in handheld video game systems.  In 1989, Nintendo released Game Boy, the first portable, handheld video game system to use interchangeable video game cartridges.  The Game Boy family of consoles are one of the most successful video game systems ever released and introduced consumers to landmark games like Tetris and Pokémon.  Nintendo has continued to lead the video game industry in the design and manufacture of handheld video game systems and games developed for those systems, including Game Boy Color, Game Boy Advance, Nintendo DS, and Nintendo 3DS.

16.     Nintendo has built its popularity and market success through substantial creative and financial investment in the development of new video games, products, intellectual property, as well as in marketing.  Nintendo has garnered tremendous consumer awareness and goodwill through its commitment to developing and delivering innovative, fun, and memorable video game systems and games.  Nintendo's video game systems and games are enjoyed by tens of millions of consumers in the United States and abroad.

17.     Nintendo continues to produce, market, and sell many of the video games originally developed for its earlier video game systems, including NES and SNES.  In 2016, Nintendo released NES Classic Edition, a miniaturized version of the NES console that features pre-installed copies of many of the most memorable games designed for

NES.  In 2017, Nintendo released SNES Classic Edition, a miniaturized version of SNES which also features pre-installed copies of many iconic games designed for SNES. Nintendo continues to produce, market, and sell NES Classic Edition and SNES Classic Edition.

18.     Nintendo also continues to produce, market, and sell many of the video games it originally developed for earlier systems digitally through official Nintendo online platforms.  Through Nintendo's official online platforms, the Virtual Console and the Nintendo eShop, consumers with a Nintendo Switch, Nintendo 3DS or 2DS handheld or Wii U system can purchase and play hundreds of games originally developed for Nintendo systems such as the NES, the SNES, and Game Boy Advance systems.

19.     Nintendo has made substantial investments in the development, marketing, and promotion of its innovative products and services.  Nintendo has acquired intellectual property and authorizes licensees who create and publish many popular video games specifically and exclusively for play on Nintendo's video game systems.   "Nintendo" video games can take years and millions of dollars to develop.

20.     NOA holds registered copyrights and registered trademarks for various Nintendo video games, video game systems, commercial packaging and video game characters, including without limitation those listed in Exhibit A (copyrights) and Exhibit B (trademarks) hereto.

## ONLINE PIRACY AND NINTENDO'S EFFORTS TO
## PROTECT ITS INTELLECTUAL PROPERTY RIGHTS

21.    The popularity of Nintendo's video games and video game systems has made Nintendo the target of intellectual property pirates, who benefit from Nintendo's investments and innovation by making and distributing unauthorized copies of Nintendo video games.

22.    In the world of video game piracy, unauthorized copies of video games often take the form of read-only memory files or read-only memory images, commonly referred to as "ROMs."  The name refers to the process of copying the software that constitutes a video game from the read-only memory found in a game cartridge or disk. These unauthorized copies—or "ROMs"—can be played on computers, phones, and other devices through the use of an "emulator," a piece of software designed to mimic the functionality of a physical video game system like the NES console or Game Boy systems.

23.    Illegal copying of video game software is an international problem. Nintendo has taken many steps to halt the illegal copying, marketing, sale, and distribution of Nintendo video games designed to be played on Nintendo video game systems.  For example, Nintendo employs technological protection measures and digital rights management tools to prevent piracy and supports law enforcement authorities who target Internet piracy around the world.

24.    Nintendo's efforts have included registration of the intellectual property rights in and to its video games systems and software in the United States and around the

world.   In addition, Nintendo protects and enforces its rights through legal actions brought around the world to stop individuals and companies from trafficking in pirated copies of its video games.

## DEFENDANTS' INFRINGING ACTIVITIES

25.   On February 2, 2010, Defendant Jacob Mathias posted a video on his personal YouTube page titled "LoveROMs.com—Download ROMs For Your Android Devices (Roms4Droid)."   In the description of the video, Mathias announced that www.ROMs4Droid.com, a website through which Mathias had been reproducing and distributing unauthorized copies of video games, was "now LoveROMs."[1]   The description,        which        is        still        available        online        at https://www.youtube.com/watch?v=9WJFs2w8lyU,   instructs   viewers   on   how   to download unauthorized copies of videogames from the LoveROMs website and how to play those unauthorized copies on their cell phones.   "If you need help getting the games to    work    or    anything    at    all,"    Mathias    added,    "please    visit    my    site, https://www.loveroms.com!"

26.   The homepage of Defendants' LoveROMs website invites visitors to the site to "Play Retro Games On Your PC, Mac, Or Android Devices" and offers "a simple and intuitive way to download video game ROMs," as follows:

---

[1] As of the date of this filing, the website www.Roms4Droid.com redirects to www.LoveROMs.com.



27.   The LoveROMs website contains and offers to the public a vast library of unauthorized copies of video games, including hundreds of Nintendo video games originally designed for nearly every video game system Nintendo has ever produced. This includes Super Mario World, Mario Kart 64, Super Mario Bros 3, Super Mario All-Stars, and without limitation, the copyrighted works listed in Exhibit A.

28.   Visitors to the LoveROMs website can use the search bar on the website's homepage to search for pirated games or browse through a catalog of pirated games organized by the system for which the games were originally developed:



29.     Once visitors to the LoveROMs website select a particular game, they are taken to a dedicated page for that game from which they can download an unauthorized copy of the game or, in many cases, play the game online.  These dedicated pages display images of the video games' original "box art," many that include Nintendo's registered copyrights for commercial packaging, and the graphic designs on the video games' packaging, many of which include Nintendo's registered trademarks (for example,

images of Mario or the Nintendo logo), including without limitation those listed in Exhibit B:



30.    The LoveROMs website includes a "Best 100" list of the most popular games on the site.  The list includes information on each game, including the video game system for which it was developed and the number of times it has been downloaded from the LoveROMs website.  As of the date of this filing, all 100 of the games on this list are video games developed for Nintendo's video game systems, and many are games for which Nintendo owns copyrights and trademarks.  Indeed, just the top 10 games on the website alone are works in which Nintendo is a copyright claimant and trademark owner, and these have collectively been downloaded from the LoveROMs website more than 60 million times.

31.    The LoveROMs website provides a prominent link to the LoveRETRO website.  Like the LoveROMs website, Defendants' LoveRETRO website also contains a

vast library of Nintendo's copyrighted video games that Defendants allow visitors to play on the website for free, without Nintendo's permission.   This includes thousands of Nintendo video games developed for the Game Boy, Game Boy Advance, Game Boy Color, NES, Nintendo 64, Nintendo DS, Nintendo Virtual Boy, and SNES systems.   By Defendants' own description, "LoveRETRO aims to provide an easy and user-friendly way to play retro video games online for free":



32.    As with the LoveROMs website, users of the LoveRETRO website can search for pirated copies of particular games or browse Defendants' online catalog of games organized by the particular game system for which they were developed:



33.     Defendants also encourage visitors to "check out our top games," all of which are games designed for play on Nintendo's game devices, and all but one of which are copyrighted works in which Nintendo is a claimant:



14

34.     Once a user of the LoveRETRO website has selected a game, he or she is presented with a view screen through which he or she can play the game online at the LoveRETRO website via an emulator that Defendants provide:



35.     Defendants' LoveROMs and LoveRETRO websites are rife with unauthorized copies of Nintendo's registered trademarks, including, without limitation, the following:



Defendants' display of these and other of Nintendo's trademarked logos is without Nintendo's authorization or consent, and it implies and confuses consumers into believing that there is some sponsorship, affiliation, or endorsement by Nintendo.

36.    Defendants are solely responsible for the contents of the LoveROMs and LoveRETRO websites.  In particular, Defendants uploaded and continue to upload and maintain the unauthorized copies of Nintendo video games that they make available to users on those websites.  For example, on October 15, 2015, Defendants promoted the availability of pirated copies of Nintendo's games with the following announcement to the LoveROMs.com Facebook page: "The complete Nintendo DS Collection has been uploaded, 5,000+ ROMs now readily available!  Enjoy."  More recently, on January 30, 2018, Defendants posted the following announcement to the LoveROMs.com Facebook page: "Direct Nintendo Wii downloads coming soon!  We're also adding some additional titles.  Stay tuned."  Indeed, Defendants boast that they are "constantly curating our titles, adding new covers, game information, and creating innovative ways to play online."

37.    In addition to pirated copies of Nintendo's video games, Defendants also reproduce and distribute unauthorized copies of other of Nintendo's copyrighted works

through the LoveROMs and LoveRETRO websites.  This includes the copyrighted BIOS files for the Gameboy Advance, Gameboy Color, and Nintendo DS systems.[2]  Defendants also make a vast library of unauthorized copies of Nintendo's copyrighted musical works available to download through the "Extras" section of the LoveROMs website.

38.    As a direct result of Defendants' infringement of Plaintiffs' copyrights and trademarks, Defendants' websites have become enormously popular.  The LoveROMs website alone receives 17 million visitors each month.  Such visitors are drawn to the website by the widespread availability of free, unauthorized copies of Nintendo's video games and other highly valuable intellectual property.  The resulting popularity of Defendants' LoveROMs and LoveRETRO websites has allowed Defendants to reap substantial ill-gotten gains, including through donations and the sale of advertising on the LoveROMs and LoveRETRO websites.

## CAUSES OF ACTION

## COUNT ONE

## COPYRIGHT INFRINGEMENT
### (The Copyright Act, 17 U.S.C. §§ 106 *et seq.* and § 501)

39.    Nintendo incorporates by reference and re-alleges paragraphs 1–38.

40.    NOA owns numerous registered copyrights related to Nintendo video games, characters, BIOS firmware for Nintendo video game systems, Nintendo musical

---

[2] "BIOS" is an acronym for "Basic Input/Output System."  A BIOS file is a piece of proprietary software stored on a memory chip in a video game system's motherboard. Many emulators used to play unauthorized copies of video games would not work without the BIOS file of the video game system for which the game was originally developed.

compositions and audio recordings.  These include, without limitation, the copyrighted works identified in Exhibit A.  Nintendo has received Certificates of Copyright Registration from the Register of Copyrights for each of the copyrighted works identified in Exhibit A.  These copyrights are in full force and effect and are enforceable by Nintendo.

41.     Through their LoveROMs and LoveRETRO websites, Defendants regularly reproduce, distribute, publicly perform and display unauthorized copies of Nintendo video games, commercial packaging, and other copyrighted works, including the copyrighted works identified in Exhibit A, all without Nintendo's permission.

42.     The foregoing acts of Defendants constitute direct infringement in violation of Nintendo's exclusive rights in its copyrighted works under 17 U.S.C. § 106.

43.     Defendants are also liable under the Copyright Act for inducing the infringing acts of the users of the LoveROMs and LoveRETRO websites.  Defendants operate the LoveROMs and LoveRETRO websites with the object of promoting their use to infringe Nintendo's copyrights.

44.     Defendants are also liable under the Copyright Act as contributory infringers for the infringing acts of users of the LoveROMs and LoveRETRO websites.  Defendants have actual and constructive knowledge of the infringing activity of users of LoveROMs and LoveRETRO websites and knowingly cause or otherwise materially contribute to those infringements of Nintendo's copyrights.

45.     Defendants are also vicariously liable for the infringing acts of users of the LoveROMs and LoveRETRO websites.  Defendants have the right and ability to

supervise and control the infringing activities that occur through the use of their websites, and at all relevant times have derived a direct financial benefit from the infringement of Nintendo's copyrights.  Defendants are therefore vicariously liable for the unauthorized reproduction, distribution, public performance, and display of Nintendo's copyrighted works, including without limitation the copyrighted works listed in Exhibit A hereto.

46.     The foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, or in reckless disregard of Nintendo's rights.

47.     As a direct and proximate result of Defendants' infringement of Nintendo's exclusive rights under Section 106 of the Copyright Act, Nintendo is entitled to damages as well as Defendants' profits under 17 U.S.C. § 504(b).

48.     Alternatively, and at Nintendo's election, Nintendo is entitled to the maximum statutory damages available under 17 U.S.C. § 504(c) in the amount of $150,000 for the infringement of each Nintendo copyrighted work or for such other amount as may be proper under 17 U.S.C. § 504(c).

49.     Nintendo is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

50.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Nintendo great and irreparable injury that cannot be fully compensated for or measured in money.  Nintendo has no adequate remedy at law. Under 17 U.S.C. § 502, Nintendo is entitled to a preliminary and permanent injunction prohibiting any further infringement of NOA's exclusive rights under the Copyright Act.

**COUNT TWO**

**TRADEMARK INFRINGEMENT**
**(The Lanham Act, 15 U.S.C. §§ 1114 and 1125(a))**

51.    Nintendo incorporates by reference and re-alleges paragraphs 1-38.

52.    Nintendo owns federal registrations for the trademarks identified in Exhibit B hereto.  These registrations are in full force and effect and are enforceable.

53.    In connection with Defendants' unauthorized reproduction, distribution, public performance, and display of Nintendo's copyrighted works on the LoveROMs and LoveRETRO websites, Defendants use Nintendo's federally registered trademarks throughout these websites, including without limitation the trademarks identified in Exhibit B, to promote their business and to encourage visitors to download or play unauthorized copies of Nintendo's copyrighted works, thereby infringing Nintendo's registered trademarks.

54.    Defendants' actions constitute use in interstate commerce of a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of the goods and services with Nintendo, or as to the origin, sponsorship, or approval of the goods and services provided by Defendants in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55.    Defendants' actions also constitute the use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of a registered trademark of Nintendo in connection with the sale, offering for sale, distribution, or advertising of

goods or services on or in connection with which such use is likely to cause confusion or mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

56.     Defendants knew or should have known of Nintendo's rights, and Defendants' infringement has been knowing, willful, and deliberate, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

57.     The infringing acts alleged above have a foreseeable effect on U.S. commerce.

58.     Nintendo has been and continues to be damaged by Defendants' wrongful acts in a manner that cannot be fully measured or compensated in economic terms, and Nintendo has no adequate remedy at law.  Defendants' acts have damaged, and threaten to continue to damage, Nintendo's reputation and goodwill.

59.     Defendants' infringement will continue unless enjoined by the Court.

60.     The interests of and links to U.S. commerce are strong in relation to those of other nations given that, among other things, enforcement of Nintendo's rights under the Lanham Act does not conflict with, but rather supports, the interests of other countries in enforcing Nintendo's similar rights under the laws of those countries, and the significance of Defendant's illegal acts is greatest in the United States because NOA is a U.S. corporation with a general sales territory in the Western Hemisphere, including the United States.

# COUNT THREE

## UNFAIR COMPETITION
### (Arizona Common Law)

61.     Nintendo incorporates by reference and re-alleges paragraphs 1–38.

62.     Defendants' conduct constitutes unfair competition that is contrary to honest practice in commercial matters under Arizona common law.  Specifically, Defendants have traded on Nintendo's reputation for quality and integrity in order to pass off their unauthorized copies of Nintendo video games and other copyrighted works to consumers.  By advertising these copies as genuine Nintendo products, Defendants have actively misled consumers about the true source of these copies.

63.     Nintendo has suffered injuries as a direct and proximate result of Defendants' unfair competitive activities, and Nintendo is therefore entitled to damages.

64.     Because Defendants have acted in willful disregard of Nintendo's rights, Nintendo is entitled to punitive damages for Defendants' unfair competitive activities.

65.     Defendants' unfair competitive activities and willful disregard of Nintendo's rights continue to cause Nintendo great and irreparable injury that cannot be fully compensated for or measured in money.  Unless enjoined and restrained by this Court, Defendants will continue to cause Nintendo great and irreparable injury.  Nintendo is entitled to a preliminary and permanent injunction prohibiting Defendants from unfairly competing with Nintendo.

# PRAYER FOR RELIEF

Nintendo seeks the following relief:

1.    An award of compensatory damages, including consequential and incidental damages, in an amount to be proved at trial.

2.    An award of statutory damages as allowed by law, in an amount up to $150,000 for the infringement of each Nintendo copyrighted work and up to $2,000,000 for the infringement of each Nintendo trademark.

3.    An award of enhanced damages or profits, whichever is greater, under Section 35 of the Lanham Act, 15 U.S.C. § 1117, and as otherwise provided by law.

4.    An award of attorneys' fees and costs.

5.    An award of pre-judgment and post-judgment interest at the maximum rate allowed by law.

6.    An accounting and an award to Nintendo of Defendants' profits, gains, or unjust enrichment in an amount to be proven at trial.

7.    An accounting of all Defendants' receipts and disbursements, profit and loss statements, advertising revenue, donations and cryptocurrency revenue and other financial materials, statements, and books relating to the operation of the LoveROMs and LoveRETRO websites and Defendants' reproduction, distribution, public performance and display of Nintendo's copyrighted works thereon.

8.    A preliminary and permanent injunction under 17 U.S.C. §§ 1203 and 502 and 15 U.S.C. § 1116, enjoining Defendants and their agents, servants, and employees, and all those in active concert or participation with Defendants, from:

a.      copying, distributing, selling, performing, displaying, playing, or otherwise using any unauthorized copy of a Nintendo copyrighted work, or any derivative thereof, including those works identified in Exhibit A;

b.      using, inducing, or enabling others to use any unauthorized reproduction or copy of Nintendo's copyrighted works, including the works identified in Exhibit A;

c.      constructing, operating, selling, or otherwise providing any product, device, website, or service that contributes to or induces the reproduction, distribution, performance, display, or other use of Nintendo's copyrighted works, including the works identified in Exhibit A;

d.      using, or inducing or enabling others to use, any reproduction, counterfeit, copy, or colorable imitation of Nintendo's trademarks, including those trademarks identified in Exhibit B, in any manner in connection with the manufacture, printing, distribution, advertising, offering for sale or sale of any goods or services, including the use of Nintendo's trademarks in connection with a website;

e.      using, or inducing or enabling others to use, Nintendo's trademarks, including those identified in Exhibit B, or any reproduction, counterfeit, copy, or colorable imitation of said marks in any manner likely to cause others falsely to believe that Defendants' products or services are connected with Nintendo or legitimate Nintendo products or services bearing Nintendo's trademarks when

they are not, including the use of Nintendo's trademarks in connection with a website;

f.      destroying, transferring, altering, moving, returning, concealing, or in any manner secreting any and all unauthorized copies of Nintendo's copyrighted works and any and all documents and records, including without limitation computer tapes, computer disks, business records, e-mails, social media accounts, social media posts, supplier names and addresses, books of accounts, receipts, and other documentation relating or referring in any way to the distribution, provision, use, or otherwise trafficking in unauthorized copies of Nintendo's copyrighted works; and

g.      unfairly competing with Nintendo.

9.      Preliminary and permanent injunctive relief, such as may later be requested before or at trial, requiring Defendants and all persons or entities in active concert or participation with Defendants, immediately to:

a.      identify every one of the Defendants' suppliers and sources of unauthorized copies of Nintendo's copyrighted works; and

b.      take steps to ensure that all unauthorized copies of Nintendo's copyrighted works in Defendants' possession, custody, or control or that are in shipment to Defendants are immediately seized, inspected, and delivered into Nintendo's possession.

10.     An Order pursuant to 17 U.S.C. §§ 1203 and 503 and 15 U.S.C. § 1116 providing for the seizure, impoundment, and destruction of all unauthorized copies of

Nintendo's copyrighted works in Defendants' custody, possession or control.

11.    An Order requiring Defendants to file with the Court and serve upon Nintendo within ten (10) days after the issuance of any injunction a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

12.    An Order transferring to Nintendo the domain names www.LoveROMS.com, www.LoveRETRO.co, www.Roms4Droid.com, and any other domain names in Defendants' possession, custody, or control that redirect to these sites or that are in any way connected to the unauthorized reproduction, distribution, public performance, display, or other use of Nintendo's copyright works.

13.    Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 19th day of July, 2018.

**GALBUT & GALBUT, P.C.**

By:    /s/ Martin R. Galbut
       Martin R. Galbut, Esq.
       Michaile J. Berg, Esq.

**JENNER & BLOCK LLP**

By:    /s/ Kenneth L. Doroshow
       Kenneth L. Doroshow, Esq.
       Jonathan A. Langlinais, Esq.

## <u>NOTICE OF ELECTRONIC FILING</u>

I hereby certify that on July 19, 2018, I electronically filed the foregoing with the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to all parties of record.


/s/ N. Sunshine Nye